UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| STEPHANIE WARREN, | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-3993-B |
| | § | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION a/k/a FANNIE MAE, | § § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Federal National Mortgage Association a/k/a Fannie Mae's (Fannie Mae) second motion for summary judgment. Doc. 92. For the following reasons, the Court **GRANTS** Fannie Mae's motion.

### I.

### BACKGROUND[1]

Plaintiff Stephanie Warren alleges that Fannie Mae defamed her by falsely accusing her of violating its code of conduct. Doc. 93, Def.'s Br. in Supp., 2. From July 1996 until February 2013, Warren was a real estate owned sales representative (REO sales rep) for Fannie Mae. Doc. 101, Pl.'s Resp., 1. REO sales reps manage foreclosed Fannie Mae properties by working with Fannie-Mae-approved local real estate agents who are responsible for maintaining the properties. *Id.* at 1–2. In 2011, Warren became the REO sales rep for properties in Pennsylvania. *Id.* She wanted to add an

---

[1]The Court draws its factual account from the summary-judgment record. Any contested fact is identified as such.

additional real estate agent to cover the Pennsylvania market, so she contacted Ryhan Finch, an agent with whom she had previously worked, for recommendations. *Id.* at 3. Finch recommended Emma Djiya, whom Warren submitted to Fannie Mae for approval. *Id.* Fannie Mae approved Djiya, and Djiya began working on Warren's Pennsylvania properties. *Id.*

In 2012, Fannie Mae's Mortgage Fraud Group investigated Finch and discovered that he had contracted with other real estate agents, including Djiya, to manage their properties for them in exchange for fees. Doc. 54, Def.'s Br. in Supp. of First Mot. for Summ. J., 6. Then, Fannie Mae's Investigations Department investigated REO sales reps, including Warren, who had worked with Finch. *Id.* at 7. Meghan Chadsey conducted the investigation and found that Warren knew about Finch's improper relationship with Djiya but failed to report the problem to her supervisor, Marsha Peters. Doc. 94, Def.'s App., Investigations Report, 7. Chadsey's report concluded that Warren had violated the Fannie Mae code of conduct by creating "the appearance of a conflict between her personal interests and Fannie Mae's business interests by improperly favoring [Finch]," failing to address Finch's business activities, and concealing Finch's relationship with Djiya. *Id.* After the investigation, Fannie Mae terminated Warren. Doc. 93, Def.'s Br. in Supp., 3.

Warren filed suit in 2013 claiming race-based discrimination and defamation. *See* Doc. 1-2, Original Pet. The Court dismissed Warren's defamation claims on procedural grounds in 2016, Doc. 36, Electronic Order, and granted summary judgment in Fannie Mae's favor on Warren's race-based discrimination claims in 2017, *Warren v. Fed. Nat'l Mortgage Ass'n.*, No. 3:14-cv-3993-B, 2017 WL 1365785, at *18 (N.D. Tex. Apr. 14, 2017) ("*Warren I*"). Warren appealed. Doc. 82, Notice of Appeal. In May 2018, the Fifth Circuit affirmed the Court's summary-judgment order but remanded the defamation claims. *Warren v. Fed. Nat'l Mortgage Ass'n.*, 17-10567, 2018 WL 2077904, at *10

(5th Cir. May 3, 2018). So the Court allowed Fannie Mae to file a second motion for summary judgment addressing Warren's defamation claims, Doc. 90, Order, which Fannie Mae did on July 5, 2018. Doc. 92, Second Mot. for Summ. J. Fannie Mae's motion is ripe for review.

## II.

## LEGAL STANDARD

Summary judgment is proper if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The substantive law identifies which facts are material, and only a dispute over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248(1986). The Court must view the facts and the inferences drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Once the summary judgment movant has met his burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). A non-movant may not simply rely on the Court to sift through the record to find a fact issue but must point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant provides must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586 . This evidence must be such that a jury could reasonably find in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

## III.

## ANALYSIS

Warren claims that Fannie Mae defamed her by accusing her of violating the Fannie Mae code of conduct and implying that she received kickbacks from Finch. Doc. 101, Pl.'s Resp., 16.[2] Fannie Mae argues it is entitled to summary judgment because Warren fails to identify a defamatory statement, and even if she could, qualified privilege bars her claim.[3]

To allege a defamation claim under Texas law, a plaintiff "must show that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement." *Jones v. Performance Serv. Integrity*, 492 F. Supp. 2d 590, 594 (N.D. Tex. 2007). Because the Court agrees that Warren fails to produce evidence that Fannie Mae made a defamatory statement, and that even if she did, Fannie Mae is entitled to qualified privilege, it does not reach the remaining elements.

First, Warren's claim that Chadsey's report accuses her of receiving kickbacks fails because the report concluded the opposite. *See* Doc. 94, Def.'s App, Investigations Decision, 6 ("Investigations also found no evidence that Ms. Warren had accepted gifts or other benefits from

---

[2] Warren also asserts defamation claims against Ray Donovan, a Fannie Mae employee. But Warren dismissed Donovan from this case in 2015, *see* Doc. 25, Mot. to Amend, 3; Doc. 28, Second Am. Compl., so the Court does not consider claims against him.

[3] Fannie Mae also makes evidentiary objections to paragraph twenty two of Warren's declaration and the declaration of Keitha Jefferson. *See* Doc. 103, Def.'s Objs. The Court agrees that Warren's evidence is inadmissible. *See Sandidge v. Fed. Nat'l Mortgage Ass'n*, No. 3:14-cv-0884-B, 2017 WL 2362016, at *9 (N.D. Tex. May 31, 2017)(finding Jefferson's statement that she heard Warren had been fired for accepting gifts was inadmissible hearsay); *Warren I,* 2017 WL 1365785, at *7, 9–10 (striking paragraph twenty two of Warren's declaration under the sham-affidavit rule).

[Finch] for providing the assistance described above or that she maintained any personal relationship with [Finch]). Second, Warren's claims that the report falsely accused her of attempting to conceal Finch's activities from Peters fail because Fannie Mae is entitled to qualified privilege.[4]

"In Texas, an employer is protected from liability for defamation by a qualified privilege 'that attaches to communications made in the course of an investigation following a report of wrongdoing and it remains intact as long as communications pass only to persons having an interest or duty to which the communications relate.'" *Jackson v. Dall. Cty. Juvenile Dep't*, 288 F. App'x 909, 912 (5th Cir. 2008) (quoting *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995)).To overcome the privilege, Warren must show by clear and convincing evidence that the statement was made with actual malice. *Jackson*, 288 F. App'x at 912–13. "In the defamation context, a statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard to its truth." *Id.* "Negligence, lack of investigation, or failure to act as a reasonably prudent person are insufficient to show actual malice." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 313 (5th Cir. 1995).

Warren fails to satisfy her burden. Warren argues that Chadsey acted with actual malice by failing to include information in her report that absolves Warren. Doc. 101, Pl.'s Resp., 20–22. She claims Chadsey did so because she "had been given orders to find some excuse to fire Warren, and was not concerned with the facts." *Id.* at 22. But Warren produces no evidence that Chadsey was

---

[4] Warren also claims the report's accusations that she mismanaged Fannie Mae's assets are false because Fannie Mae admitted her actions did not cause "a single penny in damages." Doc. 101, Resp., 22. But the report contains no accusations that Warren caused Fannie Mae financial damage, and the deposition to which Warren cites discusses Lynette Sandidge's actions, not Warren's. *See* Pl.'s App., Arrington Dep., 94:12–96:8.

told to find reasons to fire Warren. And Warren's claims that Chadsey concealed that Warren told Peters about Finch have no merit. Warren points to an email in which Finch suggests Peters should be told about his relationship with Djiya, *id.* at 21, but Finch's suggestion fails to demonstrate that Warren told Peters anything. Warren also points to Chadsey's handwritten interview notes that indicate that Peters told Chadsey that Finch was "trying to fly under the radar" and that "maybe SW once told her [Finch] said that." *Id.* Warren purposefully misrepresents the contents of the note: it does not say "SW"; it says "someone."[5] Doc. 66, Pl.'s App., Peters Ex. 1. And Peters's statement that perhaps at some point someone mentioned that Finch was less than forthcoming is not clear and convincing evidence that Warren told Peters about Finch. Thus, Warren produces no evidence that Chadsey acted with actual malice.

Warren also claims that Fannie Mae waived its privilege because it distributed the report to Ray Donovan and Shirley Small, Fannie Mae employees who did not have an interest or duty to which the report related. Doc. 101, Resp., 23. But Warren offers no evidence that Donovan or Small received the report. She implies that they must have received the report because they believed that Warren received kickbacks, *id.* at 14, 16–17, but that conclusion is not only speculative but illogical because the report states that Warren did not receive kickbacks, *see* Doc. 94, Investigations Report, 6.

---

[5] In the first round of summary-judgment briefing, Warren stated that the note said "she," not "someone," but the Court assumed her "arguably misleading representation" was due to "difficulty reading the investigator's handwritten notes." *Warren I*, 2017 WL 1365785, at *10. But because Warren once again "takes license with the note to make it more friendly to her case," *id.*, the Court can no longer assume the discrepancy is accidental.

## IV.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Fannie Mae's Second Motion for Summary Judgment. Doc. 92.

**SO ORDERED.**

**SIGNED: August 14, 2018.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE